SWEENY & CARR vs. BARBIN.

*If the plaintiff prays for a jury the defendant may insist on one, without having asked it.*

THE plaintiffs had asked for a jury in their petition, and now *Ellery* moved that he might be allowed to wave the jury, the suit being bro't upon a promissory note, and the defendant's counsel might be compelled to suffer judgment to be entered, unless he wrote the word *defence*, on the answer, according to the rule of court. *Ante 9.*

*Hennen*, contra. The plaintiffs having prayed a jury, the defendant was not bound to make the same prayer. It would have been vain and useless. *Lex neminem cogit ad vana seu impossibilia.*

*By the Court*, LEWIS, *J. alone.* Neither party can, without his neglect or consent, be deprived of his right to a jury. No latches can be imputed to the defendant. Judgment cannot be entered. If the plaintiffs wave their right to a jury, the defendant must be allowed to pray for one, or his attorney offered an opportunity of consulting with him, to ascertain whether a defence be not necessary.

MOTION OVERRULED.

TERRITORY vs. MATHER.

*The crime of stabbing, with an*

THIS was an indictment against the defendant, for stabbing, with an intent to murder.

THE Attorney General, *Duncan.* The frequency of this crime, and the facility with which offenders escaped from justice, induced the Legislature, in the year 1806, to specify and add it to our criminal code, and make it the subject of capital punishment. Our statute enacts, that whoever " shall shoot or stab any person, with " the intent to commit the crime of murder, such " person or persons so offending, on conviction " thereof, shall suffer death." 1806, *c.* 29. The dangerous practice also, which obtained in this country, and which still too generally obtains, of wearing concealed weapons, ready to carry into effect the irascible, malicious, and vindictive feelings of their owners, had its influence with the Legislature, in annexing to this offence so severe a punishment : and, though the person so shot or stabbed, might survive the attack, or recover from his wounds, yet such a fortunate escape, or accidental recovery, was not thought sufficient to free the assassin from his incurred guilt, or shield him from his merited punishment. In England, we find, that even stabbing with an intent only to maim or disfigure, is punishable with death ; and the *statute of stabbing,* as it is called, made at the accession of James I. ousted of clergy, the manslaughter which might have ensued ; this statute, like our own, being principally intended to stop the outrages frequently committed, by persons wearing concealed dirks, poignards, or daggers. The English

FALL, 1811.
First District.

TERRITORY
*vs.*
MATHER.

intent to murder, intends murder of the first degree.

G

statute, commonly called the *Black Act*, also contains provisions similar to our own; and in the Spanish Criminal Code we also find a similar law, and annexing to the same offence, the same punishment.—It is the province of the jury to aid the legislature in their intentions, and carry into effect the provisions of a salutary law; and certainly, the man, who shoots or stabs another, with an intent to murder him, can derive but small alleviation of his guilt, or extenuation of his crime, from the accidental escape or recovery of his victim.

In this crime, as well as that of murder, the intention forms the principal ingredient; and the same frame of feeling and disposition of mind must be shewn to exist in both cases; for, tho' the offence of murder be not actually committed, the intention to commit it must be distinctly proven. The definition of murder will shew what this intention must be. Murder is the unlawful killing of any person, with *malice afore-thought, either express or implied.* 4 *Bl.* 195. If, therefore the prisoner at the bar made this stab or thrust with *malice aforethought*, the crime is completed though no death ensued, and he is subject to the punishment, however severe, inflicted by the law: and this malice aforethought, as all the books tell us, is not to be taken in a narrow or restrained sense; it need not be shewn to be any particular spite or malevolence against the person so killed; it is enough, if it be an

evil design in general; if the fact be attended with such circumstances as shew it to be the dictate of a wicked, depraved and malignant heart; as flowing from a wicked and corrupt motive, and denoting a wicked, perverse and incorrigible disposition. 4 *Bl.* 198, 199. *Fost.* 256, 257. It is therefore *implied* from any cruel act against another, however sudden. 1 *East P. C.* 215. From an attentive examination and review of the circumstances attending the present case, the jury will determine whether this *malice aforethought* exist, and if the thrust were made by the prisoner at the bar, with an intent to comm't the crime of murder. (The Attorney-General here introduced the testimony of the territory.)

*Ellery*, for the defendant. By this indictment, the prisoner stands charged with stabbing, not with an intent to *kill*, but with an intent to *murder*. This is an important distinction and must be carefully kept in mind; for though there should even be evidence sufficient to shew an intention to *kill*, yet, if it be not satisfactorily and beyond a doubt proven that the intention was to *murder*, the prisoner is entitled to a verdict of acquittal. The malice prepense or aforethought necessary to constitute the crime, with which the prisoner is charged, must not, as in cases of murder, be *implied*, it must here be *proven*. The general rule is, that all killing or homicide is *malicious*, and of course amounts to murder; and when the

FALL, 1811.
First District.

TERRITORY
*vs.*
MATHER.

homicide is *proven* by the prosecution, the malice is *implied* by the law; and it is for the party accused to rebut this *legal presumption*; to disprove this *implied malice*, by shewing circumstances which may justify, excuse or alleviate the homicide. But here express malice is of the essence of the charge; it constitutes the crime; there is no *killing*, from which it may be *implied*; from a mere wounding it cannot be; for then any wound, however slight, would indicate murder; it is, therefore, incumbent upon the prosecution, fairly to make out, distinctly to shew, and satisfactorily to prove the existence of this *malice*, and of these *murderous* intentions.—In other offences, the act and the intent must be coupled together, in order to complete the crime; but here it is the intent alone.—And the law itself, upon which this indictment is founded, appears both singular and severe, and such a one as will make a jury require more proof of the crime charged under it. It is in fact a law punishing *intentions* with more severity than would be punished the *execution* of these intentions. The *attempt* here to commit the crime is made more criminal than the *crime* itself. By our statute, murder is divided into that of the *first* and *second* degree. The act says; " all murder which " shall be perpetrated by means of poison, or by " lying in wait, or by any other kind of willful, " deliberate and premeditated killing, or which " shall be committed in the perpetration or at-

" tempt to perpetrate any arson, rape, robbery or
" burglary shall be deemed murder of the first
" degree ; and all other kinds of murder shall be
" deemed murder of the second degree." The
act then declares : " that every person duly con-
" victed of murder in the first degree, shall suf-
" fer death ; and every person duly convicted of
" murder in the second degree, shall suffer im-
" prisonment at hard labor, not less than five nor
" more than fourteen years." 1805, *ch.* 4. Mur-
der in the *second* degree, as it may be perpetrated
without malice, would here appear to mean man-
slaughter, had not the Legislature, in another part
of our criminal code, particularly specified this
crime and annexed to it a different and lighter
punishment; viz : fine and imprisonment : the
fine not to exceed five hundred dollars ; the im-
prisonment at hard labor or otherwise not to ex-
ceed twelve months. 1805, *ch.* 50. Be this,
however, as it may, we find that murder in the
*second* degree is punishable only with *imprison-
ment* ; and what is the punishment for stabbing
with an intent to murder ? *Death.* Thus the *in-
tent* is made more criminal than the *act ;* and the
*design* to commit the *crime,* punished more se-
verely than the actual *commission* of it. Is this
not a solecism in Legislation ? The object of
all criminal laws is to prevent the commission of
crimes ; this, on the contrary, appears to encou-
rage it. The assassin is told to make sure work ;
if he fail in the *attempt,* he is sure to be hung ;

FALL., 1811.
First District.

TERRITORY
*vs.*
MATHER.

but if he succeed, the *perpetration* of the crime may lighten the severity of the punishment. If the law had said "stabbing, with an intent to commit the crime of murder in the *first* degree, should be punished with death :"—this reasoning could not be supported; but murder, by our law, is made a generic term, and the offence is divided into distinct species and degrees, and the intent to commit murder, by stabbing, is made capital, without specifying the species or degree. The English *statute of stabbing*, to which this is compared, bears but little analogy to it; This statute was of a temporary nature, and made for a particular occasion, and should have expired, with the necessity which produced it ; but under this statute *death* must ensue ; the crime is that of *mortally* stabbing, upon sudden provocation, which amounts only to manslaughter, a clergyable offence, but from which, in this case, this statute took away the benefit of clergy. The *Coventry act* also alluded to, has been but little acted upon ; and there, the actual mayhem or disfiguration must be shewn, as well as the lying in wait, to bring it within the act. The *Black Act* is certainly more similar. But I suspect our own law boasts a Spanish parentage, and seems, indeed, to have been copied verbatim, from their criminal code. *Vid. Anto Gomez variar. Resol lib. 3. cap.* 5, *l.* 2, 6, 10. The same law also is inserted in the Regulations or Instructions of *O'Reilley*, in the following words : " *Celui qui*

" *blessera ou tuera de guet-a-pens, et de dessein*
" *prémedité, sera condamné à mort, quoique le*
" *blessé ne meure pas : le coupable sera conduit*
" *au supplice, attaché à la queuë d'un animal, et*
" *la moitie de ses biens seront confisqués au pro-*
" *fit du fisc, ou du tresor royal.*"    *O'Reilly*, § 5,
*ar.* 20, *p.* 27.

BUT whatever be the origin of this law, or
however singular and severe its conditions, we
must still be bound by it; though certainly the
jury will require more proof of the offence char-
ged under it :—the reasons must be strong, and
the proof great, to carry into effect the severity
of its punishment.

IN order to ascertain the character of the of-
fence with which the prisoner at the bar stands
charged, and to determine if the present case be
within our act, we must first see of what species
would have been the homicide, if death had en-
sued.    If this homicide would have been justifi-
able or excusable, no offence could have been
committed : or even if the homicide would have
been felonious, but amounting to no more than
manslaughter, still we are not brought within this
act.    We are charged with stabbing, with an in-
tent to *murder*, not to *kill ;* and it must be pro-
ven to have been such a stabbing, as if death had
ensued, the *homicide* would have amounted to
*murder.*    This was the decision of the Chief,
Justice in *Milton's* case, indicted for an assault,
with an intent to murder. Lord Kenyon C. J. be-

FALL, 1811.
First District.

MEUNIER
*vs.*
COUET.

ing of opinion, that if death had ensued, it would only have been manslaughter, directed the jury to acquit the defendant upon the first count of the indictment, charging the assault with intent to murder. 1 *East. P. C.* 411.

*By the Court,* LEWIS, *J. alone.* Surely, if the jury are of opinion that, had the person stabbed died, they ought to have found the defendant guilty of murder of the second degree only, they will acquit him.

VERDICT FOR THE DEFENDANT.

## *MEUNIER* vs. *COUET.*

*Saving and reserving, &c.* are words of course, which imply no denial.

*Concubinage* goes to the credit only, of a witness.

*Vendee's daughter* an inadmissible witness.

THIS suit was brought to recover a negro slave, in the possession of the defendant. The answer stated the possession of the defendant during six years, with the plaintiff's knowledge. It began by the usual manner of reserving of *all and every manner of advantage, &c.* and did not deny the plaintiff's title.

*Mazureau* for the plaintiff. We need not adduce evidence of our title.—We have set it forth in the petition, and the answer does not deny it.

*Derbigny* contra. We admitted nothing and we have reserved all our rights, by an express clause.